UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

:

WINSON HO and JENNIFER BAGLEY,                    :        No. 18-CV-9940 (DAB)

:

Plaintiff,        :        **AMENDED COMPLAINT**

:

vs.                                :

:

PIERPONT RESERVATIONS LIMITED and STEVEN   :

E. WINICK,                                         :

:

Defendant.        :

-----------------------------------------------------------------------x

Plaintiffs Winson Ho ("Ho") and Jennifer Bagley ("Bagley," and together with Ho

"Plaintiffs"), by their attorneys, O'Brien LLP, for their Amended Complaint against Defendant

Pierpont Reservations Limited and Steven E. Winick ("Winick"), allege as follows:[1]

## NATURE OF THE ACTION

1.        Defendant Pierpont Reservations Limited is a hospitality company that facilitates

vacation rentals between homeowners and those looking for an alternative to a traditional hotel

stay while visiting a foreign city, through its website and brand name "Onefinestay."  On that

website, OFS holds itself out as upscale, marketing itself to customers looking to "[s]tay in

distinctive private homes and villas – with an unprecedented level of service."  According to

OFS' "Co-Founder" and former "Vice President Americas," "security and privacy are

foundational" to OFS's business.  As such, OFS promises that it is "the only company that visits

and vets every home in person."[2]

---

[1]        Pierpont Reservations Limited is referred to herein as "Onefinestay" or "OFS."

[2]        *See* https://web.onefinestay.com/service/; https://www.mydomainehome.com.au/onefinestay-host.

2.      Plaintiffs are a married couple who sought a place to stay while on vacation in New York City.  Relying on the promises that OFS makes on its website concerning security and privacy, Plaintiffs found an apartment in New York City owned by Winick on OFS's website, and booked that apartment for their vacation.  Unfortunately, unbeknownst to Plaintiffs, Winick's apartment contained a surreptitiously placed audio and video camera which was powered on and positioned so as to capture the master bed and the entry to the master bathroom. Such surreptitious recording violates New York state and federal laws, rules and regulations.

3.      OFS, which claims to have visited and vetted this apartment, never made Plaintiffs aware of this surreptitiously placed camera.  Nor did Winick ever make Plaintiffs aware of this surreptitiously placed camera, that he had left powered on and capable of capturing audio and video recordings.

4.      Rather, Plaintiffs only found the hidden camera after four days and nights of staying in the apartment.  In other words, through OFS's gross negligence, Plaintiffs were exposed to four days wherein their private moments – including moments dressing and undressing, in bed, and entering and exiting the bathroom – as well as their private and intimate conversations, were captured by video and audio recording.

5.      Based on the foregoing, and as alleged in more detail below, Plaintiffs bring this action to seek redress and damages for Defendant Winick's wanton, unlawful conduct as well as for Defendant OFS's grossly negligent, unlawful conduct.  Plaintiffs also seek to hold OFS responsible for the false and misleading statements that OFS makes on its website to market its services to consumers.

## THE PARTIES

6.      Plaintiffs Ho and Bagley are married individuals with a home address at 5122 Morningside Dr., #701, Houston, TX  77005.

7.      Defendant Pierpont Reservations Limited is a hospitality company organized under the laws of the United Kingdom, with a registered office address at Laser House, 132-140 Goswell Road, London, England, EC1V 7DY.  On information and belief, OFS conducts business in New York State, and maintains offices at 601 West 26th Street, Suite 300, New York, NY 10001.

8.      Defendant Steven E. Winick is a natural person with a home address at 143 Reade Street, Apartment 3C, New York, New York 10013.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) based on the diversity of the parties to this civil action wherein the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

10.      Additionally, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 based on the fact that Plaintiffs allege a violation of 18 U.S.C. § 2511.

11.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in New York, New York.

## STATEMENT OF FACTS

### OFS's Promises

12.      Defendant OFS was founded in London in 2009 to provide a service to the public for financial remuneration whereby OFS connects select home or apartment owners in certain destinations with third parties intending to rent those properties.

13.      OFS describes itself as "the world's first unhotel," and "a hospitality brand like no other."  Media have described OFS as an "upmarket Airbnb," and a "Super-Fancy Airbnb."[3]

14.      In 2012, OFS launched in New York City.[4]

15.      Pursuant to OFS's service, homeowners contract with OFS to offer their homes for rent.  OFS maintains a website, which is a platform whereby the prospective renters may view available properties.  The prospective renters then use the OFS website to select a home and complete the booking.

16.      Critically, not just any homeowner can list their property for rent through OFS. Rather, OFS guarantees that it "carefully" selects each of the residences that are offered for rent on its website.  As such, OFS promises that it is "the only company that visits and vets every home in person," "photograph[s]" each home, and that "each  home is prepared to our exacting hospitality standards."[5]

17.      In regard to booking a home in New York City, OFS states that each of the properties offered for rent was "handpicked" by its "team of experts.  Moreover, OFS promises to make each prospective renter aware of any "Home Truths" concerning the properties that it

---

[3]      *See* https://web.onefinestay.com/about/,  https://techcrunch.com/2013/09/17/onefinestay-paris-la/.

[4]      *See* https://techcrunch.com/2012/06/19/onefinestay-series-b/?_ga=2.162128955.624147586.1537200684-1947611006.1537200684.

[5]      *See* https://www.accorhotels.group/en/group/our-brands-and-services/onefinestay, https://web.onefinestay.com/service/.

offers for rent through its website.  Thus, according to OFS, they have "visited each home in person to take accurate photographs, detailed room configurations and home truths, so you [the renter] can book with the same confidence you have in the best hotels."  OFS promises to highlight any such Home Truth on the listing for each of its New York City properties, and to "make sure" that the renter is aware of any such Home Truth when booking.[6]

## **The Booking**

18.     Relying on OFS's promises to thoroughly vet each property offered for rent through its website, on June 13, 2018, Plaintiffs used the OFS website to book Winick's apartment, located in the TriBeCa neighborhood of Manhattan (the "Apartment"), for a trip that was to last from June 30, 2018 through July 7, 2018.

19.     As per OFS policy and practice, no written agreement exists directly between Plaintiffs and the Homeowners.  Rather, the rental of the property was conducted entirely through OFS.

20.     Thus, the booking and payment of the property was made by Plaintiffs solely through the OFS platform.

21.     As such, Plaintiffs became lawful occupants of the Apartment for the defined rental period.

22.     As the entity in full or joint control of the leasing process of the Apartment, OFS owed Plaintiffs a duty to exercise reasonable care under the circumstances to avoid causing personal injury.  Moreover, Plaintiffs relied on OFS's promises to personally visit, vet, and inspect each property offered for rental, and to inform Plaintiffs regarding any "Home Truths," prior to and at the time of booking.

---

[6] *See* https://web.onefinestay.com/new-york/, https://web.onefinestay.com/pages/faq/new-york-stay/ .

23.     After booking the Apartment, Plaintiffs were sent a booking record.  The booking record contained a listing of "Home Truths," for the Apartment.  The Home Truths did not mention that the Apartment contained any video or audio recording equipment.[7]

24.     At no time did OFS inform Plaintiffs that a video "webcam" was located in the master bedroom of the Apartment, or that any such webcam was powered on and capable of capturing video and audio recordings of Plaintiffs.

25.     At no time did Winick inform Plaintiffs that a video "webcam" was located in the master bedroom of the Apartment, or that any such webcam was powered on and capable of capturing video and audio recordings of Plaintiffs.

**The Stay**

26.     Plaintiffs, along with their minor child and nanny, arrived at the Apartment for their stay on June 30, 2018.  Upon arrival, they were met by an OFS representative who showed them into the Apartment.

27.     Shortly after entering the Apartment, Plaintiffs noticed the presence of a webcam video and audio recording device in what Plaintiffs surmised was a children's bedroom or playroom.  This camera, which was powered on and apparently recording, was situated in plain sight.  As such, Plaintiffs assumed that this camera was meant as a security device for the homeowners' children.  Plaintiffs covered this camera with a towel.

28.     Plaintiffs looked through the rest of the apartment and did not find any other audio or video recording devices in the Apartment, although Plaintiffs did find an "Alexa" device in the kitchen which had been disclosed to Plaintiffs by OFS prior to Plaintiffs' arrival.

---

[7]     *See* Exhibit A.

29.     On the evening of July 4, 2018, after Plaintiffs had stayed in the Apartment for four nights, Ho noticed a small green light emanating from the back of a console cabinet under the television in the master bedroom.  This cabinet was situated directly opposite the bed.

30.     Upon inspection, the green light belonged to a second webcam.  Mr. Ho, who is familiar with such devices, immediately concluded that the webcam was powered on, fully operational, and apparently recording.

31.     Moreover, Mr. Ho realized that the webcam, which appeared to be an "Amazon Cloud Cam" that is compatible with "Alexa," was a type of camera that was capable of audio recording, and capturing video imagery in the dark.

32.     The camera was hidden in the back of a shelf in the console, in a location where it was difficult to detect on casual inspection.  Indeed, Plaintiffs did not detect the camera for four days, despite looking at the shelf on several occasions.[8]

33.     Moreover, the wiring for the camera came up through the back of the console, so that no wires were visible absent a close inspection.

34.     From its placement inside the console, the webcam apparently commanded a view of the master bed as well as the entry to the master bathroom.

35.     As lawful occupants of the Apartment, Plaintiffs had a reasonable expectation of privacy in these areas of the Apartment.  They had occupied these portions of the Apartment for four days, and had used these portions of the Apartment to dress and undress.  Moreover, Plaintiffs engaged in private and intimate conversations while in these locations.  Plaintiffs performed these activities in full view of the webcam, while the webcam was powered on and, on information and belief, captured video and audio recordings of Plaintiffs.

---

[8]     *See* Exhibit B.

36.     On information and belief, video clips created by an "Amazon Cloud Cam" are available to the subscriber for a minimum of 24 hours, and potentially for much longer.

37.     In New York State, it is unlawful to engage in surreptitious video surveillance for amusement or sexual gratification in any place where a party has a reasonable expectation of privacy pursuant to New York Penal Law § 250.45.

38.     Moreover, in New York State, it is unlawful to install or maintain a camera or other instrument that can be used to surreptitiously observe a person in a bathroom or other room assigned to guests in a rented room pursuant to G.B.L. § 395-b.

39.     Under federal law, it is unlawful to intentionally intercept a party's oral communications without that party's consent pursuant to 18 U.S.C. § 119.

40.     Plaintiffs are embarrassed and angry about the fact that the webcam was and/or could have been used to record them while they were undressed, as well as to listen in on and record their personal and intimate conversations.

**Defendants' Response**

41.     Mr. Ho made OFS aware of the hidden camera in the master bedroom subsequent to Plaintiffs' discovery of the recording device.

42.     In response, OFS sent a team member to the Apartment.  After inspecting the premises, the OFS team member stated to Mr. Ho that OFS should have disclosed the existence of the cameras in the Apartment and that OFS had botched its vetting and inspection of the Apartment.  The OFS team member also expressed to Mr. Ho that the presence of the cameras was grounds for removing the Apartment from the OFS platform.

43.     OFS also informed Plaintiffs that OFS had reached out to the homeowner of the Apartment – now known to be Winick – who confirmed the location of the two webcams that

Plaintiffs had found including the hidden camera in the master bedroom.  Moreover, OFS now claimed that, according to Winick, there was a ***third*** camera somewhere in the kitchen/living room area of the Apartment.

44.     OFS eventually sent another team member to the Apartment to remove all of the cameras.  The third camera was never found by Plaintiffs and it is unclear if it was ever found by OFS.

45.     OFS also claimed that Winick told them that  none of the cameras in the Apartment were "recording," which, upon information and belief, is incorrect given that the cameras of the type found in the Apartment automatically record when they are powered on and the green light is lit.  When pressed by Mr. Ho as to why the cameras were powered on and operational, Defendants' story shifted, and OFS stated that Winick claimed that the cameras were not "actively recording."

46.     The assertion that the cameras were not recording is, upon information and belief, false, as according to Amazon's description, the cameras automatically record and the files are stored for a minimum of 24 hours and up to 30 days.  The cameras also provide live-view as well as motion recording and alert the user – in this case Winick – when the camera detects motion.[9]

47.     Mr. Ho again pressed OFS for an explanation from Winick as to why the cameras were powered on and operational, and as to why the camera in the master bedroom was located in a hidden location rather than in plain view.  OFS stated that Winick claimed to have "remembered to move the camera in the master bedroom" and "forgotten to store away the other two cameras."  Thus, by claiming that he "moved the camera in the master bedroom," Winick appears to be stating that he deliberately moved the camera to the hidden location.

---

[9]         *See* Exhibit C.

48.     Over the course of the next several weeks, OFS repeatedly told Mr. Ho that it was in contact with Winick, and that OFS would provide Plaintiffs with the explanation that they sought.

49.     On August 6, 2018, over a month after Plaintiffs brought the matter to OFS's attention, OFS provided Plaintiffs with an unsworn letter from Winick's attorney stating merely that "there **is** no audio or video recording of [Plaintiffs] at any time."  (emphasis supplied.)

50.     Unsatisfied with that response, Plaintiffs again requested an explanation as to the placement of the camera in the master bedroom, and an assurance that Plaintiffs had never been recorded, or that if they had been recorded, that any such recording had been destroyed.  To this date, and despite the fact that Plaintiffs have provided Defendants numerous opportunities to provide one, neither OFS nor Winick has ever provided a satisfactory explanation as to why the camera was placed in a hidden location in the master bedroom, or stated unequivocally that Plaintiffs were never recorded.

51.     On information and belief, at the time Plaintiffs filed their initial Complaint in this action, OFS **still** offered the Apartment for rent on its web portal without disclosing the existence of video and audio surveillance equipment in the Apartment.[10]

## COUNT ONE
### (Negligence against Defendant OFS)

52.     Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

53.     OFS created a business enterprise whereby it leases, offers to lease, places for rent, solicits listings of places for rent, solicits prospective tenants and/or collects rent from real property in exchange for financial remuneration.

---

[10]     *See* Exhibit D.

54.     OFS's business enterprise depends on bringing two or more parties together for the purpose of leasing a particular piece of property.

55.     The affirmative act by OFS of bringing lessors and lessees of real property together through its internet portal places upon OFS an obligation of ordinary care.

56.     Moreover, OFS affirmatively promises that it personally visits, vets, and inspects each property offered for rental on its portal, and to inform potential lessees regarding any "Home Truths" prior to and at the time of booking.

57.     In failing to engage in proper investigation and vetting of lessors before allowing them to post their property on its internet portal, and failing to properly inspect the property and make Plaintiffs aware of the surveillance equipment therein, OFS created and continues to create a foreseeable risk of harm to parties such as Plaintiffs who rely upon OFS' promises that it:

- "carefully" selects each of the residences that are offered for rent on its website;

-  is "the only company that visits and vets every home in person";

- that "each home is prepared to [OFS's] exacting hospitality standards";

- "visited each home" offered for rent in New York City "in person to take accurate photographs, detailed room configurations and  home truths, so [the renter] can book with the same confidence you have in the best hotels"; and

- will highlight any such Home Truth on the listing for each of its New York City properties, and "make sure" that the renter is aware of any such Home Truth when booking.

58.     In this instance, OFS, upon information and belief, conducted  no  or an inadequate background investigation of the owners of the Apartment, and engaged in no reasonable or an inadequate investigation and vetting of the Apartment prior to posting the property for rent upon its internet portal.  Nor did OFS make a reasonable effort to ensure that Plaintiffs were aware of the surveillance equipment placed around the Apartment.

59.     Such failure created a foreseeable risk of harm for Plaintiffs, and, in fact, Plaintiffs were subject to a hostile, intimidating, and humiliating environment during their stay at the Apartment due to the fact that Plaintiffs' were subjected to surreptitious video and audio surveillance.

60.     For these reasons, OFS breached its obligation of ordinary care.

61.     As a direct and proximate result of OFS's breaches, Plaintiffs have suffered damages to be proven at time of trial, including but not limited to, humiliation, shock, embarrassment, intimidation, physical distress and injury, fear, stress and other damages.

## COUNT TWO
### (Negligent Infliction of Emotional Distress against Defendant OFS)

62.     Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

63.     OFS created a business enterprise whereby it leases, offers to lease, places for rent, solicits listings of places for rent, solicits prospective tenants and/or collects rent from real property in exchange for financial remuneration.

64.     OFS's business enterprise depends on bringing two or more parties together for the purpose of leasing a particular piece of property.

65.     The affirmative act by OFS of bringing lessors and lessees of real property together through its internet portal places upon OFS an obligation of ordinary care.

66.     Moreover, OFS affirmatively promises that it personally visits, vets, and inspects each property offered for rental on its portal, and to inform potential lessees regarding any "Home Truths," prior to and at the time of booking.

67.     In failing to engage in proper investigation and vetting of lessors before allowing them to post their property on its internet portal, and failing to properly inspect the property and

make Plaintiffs aware of the surveillance equipment therein, OFS created and continues to create

a foreseeable risk of harm to parties such as Plaintiffs who rely upon OFS's promises that it:

- "carefully" selects each of the residences that are offered for rent on its website;

-  is "the only company that visits and vets every home in person,";

- that "each home is prepared to [OFS's] exacting hospitality standards";

- "visited each home" offered for rent in New York City "in person to take accurate photographs, detailed room configurations and home truths, so [the renter] can book with the same confidence you have in the best hotels"; and

- will highlight any such Home Truth on the listing for each of its New York City properties, and "make sure" that the renter is aware of any such Home Truth when booking.

68.    In this instance, OFS, upon information and belief, conducted no or an inadequate

background investigation of the owners of the Apartment, and engaged in no reasonable or an

inadequate investigation and vetting of the Apartment prior to posting the property for rent upon

its internet portal.  Nor did OFS make a reasonable effort to ensure that Plaintiffs were aware of

the surveillance equipment placed around the Apartment.

69.    Such failure created a foreseeable risk of harm for Plaintiffs, and, in fact,

Plaintiffs were subject to a hostile, intimidating, and humiliating environment during their stay at

the Apartment due to the fact that Plaintiffs were subjected to surreptitious video and audio

surveillance.

70.    For these reasons, OFS breached its obligation of ordinary care.

71.    As a direct and proximate result of OFS's breaches, Plaintiffs have suffered

damages to be proven at time of trial, including but not limited to, humiliation, shock,

embarrassment, intimidation, physical distress and injury, fear, stress and other damages.

**COUNT THREE**
**(Reckless Infliction of Emotional Distress against Defendant OFS)**

72.    Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

73.    OFS created a business enterprise whereby it leases, offers to lease, places for rent, solicits listings of places for rent, solicits prospective tenants and/or collects rent from real property in exchange for financial remuneration.

74.    OFS's business enterprise depends on bringing two or more parties together for the purpose of leasing a particular piece of property.

75.    Moreover, OFS affirmatively promises that it personally visits, vets, and inspects each property offered for rental on its portal, and to inform potential lessees regarding any "Home Truths," prior to and at the time of booking.

76.    In failing to engage in proper investigation and vetting of lessors before allowing them to post their property on its internet portal, and failing to properly inspect the property and make Plaintiffs aware of the surveillance equipment therein, OFS created and continues to create a foreseeable risk of harm to parties such as Plaintiffs who rely upon OFS's promises that it:

- "carefully" selects each of the residences that are offered for rent on its website;

-  is "the only company that visits and vets every home in person,";

- that "each home is prepared to [OFS's] exacting hospitality standards";

- "visited each home" offered for rent in New York City "in person to take accurate photographs, detailed room configurations and home truths, so [the renter] can book with the same confidence you have in the best hotels"; and

- will highlight any such Home Truth on the listing for each of its New York City properties, and "make sure" that the renter is aware of any such Home Truth when booking.

77.     In this instance, OFS, upon information and belief, conducted no or an inadequate background investigation of the owners of the Apartment, and engaged in no reasonable or an inadequate investigation and vetting of the Apartment prior to posting the property for rent upon its internet portal.  Nor did OFS make a reasonable effort to ensure that Plaintiffs were aware of the surveillance equipment placed around the Apartment.

78.     The use by Winick of a camera capable of spying on Plaintiffs while staying in the Apartment, and in particular of spying on Plaintiffs while Plaintiffs were undressed, were entering and exiting the bathroom, and were in bed, was conduct that was extreme and outrageous in nature.

79.     Such failure to properly investigate and vet the Apartment created a substantial probability of severe emotional distress to Plaintiffs because Plaintiffs were subject to extreme and outrageous conduct during their stay at the Apartment due to the fact that Plaintiffs were subjected to surreptitious video and audio surveillance.

80.     As a direct and proximate result of OFS's breaches, Plaintiffs have suffered severe emotional distress, including but not limited to, humiliation, shock, embarrassment, intimidation, physical distress and injury, fear, stress and other damages.

**COUNT FOUR**
**(Violation of New York General Business Law ("GBL") § 349**
**against Defendant OFS)**

81.     Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

82.     In marketing its services to consumers, OFS makes a number of false and/or misleading statements.  For example, OFS guarantees that it "carefully" selects each of the residences that are offered for rent on its website.  As such, OFS promises that it is "the only

company that visits and vets every home in person," and that "each home is prepared to our exacting hospitality standards."

83.     In regard to booking a home in New York City, OFS states that each of the properties offered for rent was "handpicked" by its "team of experts."  Moreover, according to OFS, they have "visited each home in person to take accurate photographs, detailed room configurations and home truths, so you [the renter] can book with the same confidence you have in the best hotels."  OFS promises to highlight any such Home Truth on the listing for each of its New York City properties, and to "make sure" that the renter is aware of any such Home Truth when booking.

84.     OFS creates the impression amongst reasonable consumers that the properties available for rent on its portal have been inspected and determined to be safe and to comply with the rules and regulations applicable to "the best hotels."  OFS knowingly and intentionally makes these claims and promises to entice consumers to rent properties through its internet portal.

85.     Relying on OFS' claims and promises, Plaintiffs booked the Apartment through the OFS portal.

86.     In the Apartment, Plaintiffs were exposed to surreptitious recording in a location in which Plaintiffs possessed a reasonable expectation of privacy, in violation of New York State and federal law.

87.     On information and belief, OFS did not carefully vet the Apartment,  nor did it provide Plaintiffs with accurate information regarding the presence of video and audio recording devices in the Apartment.  As such, OFS's claims are false and/or misleading, and OFS engaged in, and continues to engage in, deceptive acts and practices.  On information and belief, OFS rented the Apartment to Plaintiffs despite knowing that it had not carefully vetted the Apartment.

88.     OFS has violated and continues to violate GBL § 349, which makes deceptive

acts and practices unlawful.  As a direct and proximate result of OFS's violation of GBL § 349,

as described above, Plaintiffs have suffered damages in an amount to be determined at trial,

including but not limited to the expenditure of reasonable attorneys' fees.

### COUNT FIVE
### (Intentional Infliction of Emotional Distress against Defendant Winick)

89.     Plaintiffs repeat and reallege each and every allegation set forth above as though

fully set forth herein.

90.     The use by Winick of a camera capable of spying on Plaintiffs while staying in

the Apartment, and in particular of spying on Plaintiffs while Plaintiffs were undressed, were

entering and exiting the bathroom, and were in bed, was conduct that was extreme and

outrageous in nature.

91.     The utilization by Winick of a camera capable of capturing video imagery of

Plaintiffs, as well as the capacity to intercept Plaintiffs' oral communications, demonstrates an

intention to cause emotional distress to Plaintiffs.

92.     As a result of Winick's actions, Plaintiffs suffered severe emotional distress.

93.     As a proximate and direct cause of Winick's conduct, Plaintiffs have suffered

special damages to be proven at the time of trial.

94.     As a proximate and direct result of Winick's outrageous conduct, Plaintiffs have

suffered general damages, including, but not limited to, humiliation, shock, embarrassment,

intimidation, physical distress and injury, fear, stress and other damages to be proven at the time

of trial.

95.     Plaintiffs allege, upon information and belief, that Winick committed the acts

delineated herein maliciously and oppressively in conscious disregard for Plaintiffs' rights.

Moreover, Plaintiffs allege that Winick's actions involve a high degree of moral culpability, and that it is imperative that Winick and others be deterred from engaging in similar conduct in the future.  As such, Plaintiffs are entitled to recover punitive damages in an amount to be determined at trial.

**COUNT SIX**
**(Negligent Infliction of Emotional Distress against Defendant Winick)**

96.     Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

97.     Winick provided the Apartment for rental by Plaintiffs on OFS.

98.     Upon renting the Apartment to Plaintiffs, Winick had a duty to remove or disable any camera or recording device in the bedroom because Plaintiffs possessed a reasonable expectation of privacy.

99.     Such failure created a foreseeable risk of harm for Plaintiffs, and, in fact, Plaintiffs were subject to a hostile, intimidating, and humiliating environment during their stay at the Apartment due to the fact that Plaintiffs were subjected to surreptitious video and audio surveillance.

100.     For these reasons, Winick breached his duty under under G.B.L. § 395-b(2).

101.     As a direct and proximate result of Winick's breaches, Plaintiffs have suffered damages to be proven at time of trial, including but not limited to, humiliation, shock, embarrassment, intimidation, physical distress and injury, fear, stress and other damages.

## COUNT SEVEN
### (Violation of 18 U.S.C. § 2511 against Defendant Winick)

102.    Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

103.    Winick, upon information and belief, and via use of the camera located in the master bedroom of the Apartment, intentionally intercepted and/or endeavored to intercept the oral communications of Plaintiffs while Plaintiffs were staying in the Apartment.

104.    Plaintiffs had a reasonable expectation of privacy while staying in the Apartment.

105.    Such interception and/or attempts to intercept the oral communication of the Plaintiffs are prohibited pursuant to 18 U.S.C. § 2511.

106.    Oral communications are defined by the relevant United States statute as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation," as defined within 18 U.S.C. § 2510.

107.    A civil claim for such wrongful conduct is authorized pursuant to 18 U.S.C. § 2520.

108.    Recoverable damages include monetary damages, punitive damages, and reasonable attorneys' fees and litigation costs.

109.    As a proximate and direct result of Winick's outrageous conduct, Plaintiffs have suffered general damages, including, but not limited to, humiliation, shock, embarrassment, intimidation, physical distress and injury, fear, stress and other damages to be proven at the time of trial.

110.    Plaintiffs allege, upon information and belief, that Winick committed the acts delineated herein maliciously and oppressively in conscious disregard for Plaintiffs' rights.

Moreover, Plaintiffs allege that Winick's actions involve a high degree of moral culpability, and that it is imperative that Winick and others be deterred from engaging in similar conduct in the future.  As such, Plaintiffs are entitled to recover punitive damages in an amount to be determined at trial.

**COUNT EIGHT**
**(Declaratory Judgment)**

111.    Plaintiffs repeat and reallege each and every allegation set forth above as though fully set forth herein.

112.    OFS has indicated that a forum selection clause requires that Plaintiffs' claims be brought in a competent jurisdiction in England or Wales.

113.    Plaintiffs are entitled to declaratory judgment that the forum selection clause does not require that this action proceed in any other forum.

WHEREFORE, Plaintiffs demands judgment against OFS and Winick awarding compensatory and punitive damages in amounts to be determined at trial, as well as Plaintiffs' reasonable attorneys' fees, expenses and costs, declaratory judgment that OFS's forum selection clause does not bar Plaintiffs' claims, and any other relief the Court finds to be just and proper.

Dated: New York, New York
January 18, 2019

O'BRIEN LLP

/s/ James Ng
Sean O'Brien, Esq.
A.J. Monaco, Esq.
James Ng, Esq.
750 Lexington Avenue
25th Floor
New York, New York 10022
Tel:  (212) 729-9243
Fax: (646) 205-3071
sobrien@obrienllp.com
ajmonaco@obrienllp.com
jng@obrienllp.com

*Attorneys for Plaintiffs Winson Ho and Jennifer Bagley*