UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
                                                      :
WINSON HO and JENNIFER BAGLEY,                        :        No. 18-CV-9940 (DAB)
                                                      :
                    Plaintiff,                        :        (Batts, J.)
                                                      :
        vs.                                           :
                                                      :
PIERPONT RESERVATIONS LIMITED and STEVEN              :
E. WINICK,                                            :
                                                      :
                    Defendant.                        :
-----------------------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' FIRST MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

Sean O'Brien, Esq.
A.J. Monaco, Esq.
James Ng, Esq.
O'BRIEN LLP
750 Lexington Avenue 25th Floor
New York, New York 10022
Tel:  (212) 729-9243
Fax:  (646) 205-3071
sobrien@obrienllp.com
ajmonaco@obrienllp.com
jng@obrienllp.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... (ii)

PRELIMINARY STATEMENT ....................................................................... 1

FACTUAL BACKGROUND ........................................................................... 3

ARGUMENT ................................................................................................. 4

I.    THE COURT SHOULD DENY DEFENDANTS' RULE 12(b)(6) MOTION .................. 4

    A.    Legal Standards ................................................................................ 4

    B.    The GRA and AA Do Not Provide a Defense to Plaintiffs' Claims ..................... 5

        1.    The Court Should Not Consider the
            GRA and AA on a Rule 12(b)(6) Motion ................................... 5

        2.    The GRA and AA Do Not Bar Plaintiffs' Claims ....................... 6

    C.    Plaintiffs Have Stated Viable Claims against OFS ................................ 8

        1.    Count Two (Negligent Infliction of Emotional Distress) .......................... 8

        2.    Count Three (Reckless Infliction of Emotional Distress)........................ 10

        3.    Count Four (Violation of G.B.L. § 349) .................................... 11

    D.    Plaintiffs Have Stated Viable Claims against Mr. Winick .................. 13

        1.    Count Five (Intentional Infliction of Emotional Distress)........................ 13

        2.    Count Six (Negligent Infliction of Emotional Distress) ........................... 14

        3.    Count Seven (Violation of 18 U.S.C. § 2511) ......................................... 15

II.    THE COURT SHOULD DENY DEFENDANTS' RULE 12(b)(3) MOTION ................. 16

    A.    Legal Standards ................................................................................ 16

    B.    Venue is Proper Despite the GRA's Permissive Forum Selection Clause ........... 17

    C.    OFS' Motion to Enforce the GRA's Forum Selection Clause is Improper ......... 17

CONCLUSION ............................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Adams v. Oak Park Marina Inc.*,
   261 A.D.2d 903 (4th Dep't 1999) ............................................................................ 10, 14, 15

*Aleem v. Experience Hendrix, L.L.C.*,
   2017 WL 3105870 (S.D.N.Y. July 20, 2017) ................................................................ 10, 14

*Alexander v. Kendall Cent. School Dist.*,
   221 A.D.2d 898 (4th Dep't 1995) ..................................................................................... 7

*Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.*,
   572 F.3d 86 (2d Cir. 2009) ............................................................................................. 17

*Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc.*,
   786 F. Supp. 2d 798 (S.D.N.Y. 2011) ............................................................................. 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 4

*Atlantic Marine Construction Co. Inc. v. United States District Court
   for the Western District of Texas*,
   571 U.S. 49 (2013) .................................................................................................... 17, 18

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 4

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
   3 N.Y.3d 200 (N.Y. 2004) ............................................................................................. 11

*Boll v. Sharp & Dohme*,
   281 A.D. 568 (1st Dep't 1953) ....................................................................................... 6

*Brunache v. MV Transp., Inc.*,
   151 A.D.3d 1011 (2d Dep't 2017) .................................................................................. 13

*Carter v. Stanton*,
   405 U.S. 669 (1972) ....................................................................................................... 5

*Casper Sleep, Inc. v. Mitcham*,
   204 F. Supp. 3d 632 (S.D.N.Y. 2016) .......................................................................... 3, 4

*Dana v. Oak Park Marina, Inc.*,
   230 A.D.2d 204 (4th Dep't 1997) ............................................................................ *passim*

*Doe v. Doe*,
   2017 WL 3025885 (S.D.N.Y. July 14, 2017) ................................................................ 13

*Gale v. International Bus. Machines Corp.*,
    9 A.D.3d 446 (2d Dep't 2004) ............................................................. 13

*Glob. Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150, 155 (2d Cir. 2006) ....................................................... 4, 6

*Global Seafood Inc. v. Bantry Bay Mussels Ltd.*,
    659 F.3d 221 (2d Cir. 2011) ............................................................... 17

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985) ........................................................... 5, 6

*Hering v. Lighthouse 2001, LLC*,
    21 A.D.3d 449 (2d Dep't 2005) ........................................................ 9, 14

*Howell v. New York Post Co.*,
    81 N.Y.2d 115 (N.Y. 1993) ................................................................ 10

*Kalisch-Jarcho, Inc. v. City of New York*,
    58 N.Y.2d 377 (N.Y. 1983) ................................................................. 7

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
    313 U.S. 487 (1941) ........................................................................... 7

*Leonard F. v. Isr. Disc. Bank of N.Y.*,
    199 F.3d 99 (2d Cir. 1999) ................................................................. 5

*Lopez-Serrano v. Rockmore*,
    132 F. Supp. 3d 390 (E.D.N.Y. 2015) ................................................ 6

*Meskunas v. Auerbach*,
    2019 WL 719514 n. 4 (S.D.N.Y. Feb. 20, 2019) ................................ 6

*Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006) ............................................................. 4, 6

*Nicosia v. Amazon.com*,
    834 F.3d 220 (2d Cir. 2016) ............................................................. 5, 6

*Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*,
    2017 WL 1215753 (S.D.N.Y. Mar. 31, 2017) ................................... 15

*Person v. Google Inc.*,
    456 F. Supp. 2d 488 (S.D.N.Y. 2006) .............................................. 16

*Philippe Nyc I LLC v. Philippe West Coast, LLC*,
    2016 WL 1183669 (S.D.N.Y. Mar. 24, 2016) ................................... 16

*Phillips v. Audio Active Ltd.*,
 494 F.3d 378 (2d Cir. 2007) ...................................................................... 16, 17

*Robinson v. Town of Kent, N.Y.*,
 2012 WL 3024766 (S.D.N.Y. July 24, 2012) .................................................. 10, 14

*Salamone v. Oak Park Marina, Inc.*,
 259 A.D.2d 987 (4th Dep't 1999) .................................................................. *passim*

*Sawicka v. Catena*,
 79 A.D.3d 848 (2d Dep't 2010) .................................................................. 11, 13

*Schlessinger v. Valspar Corp.*,
 21 N.Y.3d 166 (N.Y. 2013) ........................................................................ 13

*Sell It Social, LLC v. Strauss*,
 2018 WL 2357261 (S.D.N.Y. Mar. 8. 2018) .................................................. 15

*Smalls v. Jummonte*,
 2010 WL 3291587 (S.D.N.Y. Aug. 13, 2010) ................................................ 4

*Topor v. State*,
 176 Misc.2d 177 (Ct. Cl. 1997) .................................................................. 8, 14

## **Other Authorities**

18 U.S.C. § 2511 .......................................................................................... *passim*

28 U.S.C. § 1391 .......................................................................................... 17

Rule 12(b)(3) ............................................................................................... *passim*

Rule 12(b)(6) ............................................................................................... 4, 5

G.B.L. § 349 ............................................................................................... *passim*

G.B.L. § 395 ............................................................................................... 9, 10, 13, 14

Plaintiffs Winson Ho ("Mr. Ho") and Jennifer Bagley ("Ms. Bagley"), through their undersigned counsel, files this Memorandum in Opposition to the Motion to Dismiss the Amended Complaint filed by Defendants Pierpont Reservations Limited ("Onefinestay" or "OFS") and Steven E. Winick ("Mr. Winick") pursuant to Rule 12(b)(6) and Rule 12(b)(3) (Dkt. 31, the "Motion to Dismiss").  For the reasons set forth below, Defendants' Motion to Dismiss should be denied.

## <u>PRELIMINARY STATEMENT</u>

After staying for several nights in an apartment that they had rented from Defendant Steven Winick, Plaintiffs discovered a concealed camera in the Apartment's master bedroom. This camera was surreptitiously placed, so as to avoid easy detection, and had apparently captured Plaintiffs' most intimate moments through audio and video recording.  Plaintiffs had found Mr. Winick's apartment through the "Onefinestay" website, on which Defendant OFS promised to "visit and vet every home in person," and to provide its customers with "Home Truths," so that renters "can book with the same confidence you have in the best hotels."  Thus, the surreptitious recording on Plaintiffs was done in breach of OFS's representations that their listed apartments would be properly "vetted," in contravention of legal expectations that a guest's reasonable expectation of privacy, and federal law. OFS and Mr. Winick have now filed this Motion to Dismiss in a effort to avoid responsibility for their improper acts and omissions.

*First*, Defendants cite to extrinsic evidence, including affidavits of Mr. Winick and his wife, as well as boilerplate language contained in the Guest Reservation Agreement ("GRA") and Accommodation Agreement ("AA") as a bar to liability. Yet it is not proper for the Court to consider these agreements on a motion to dismiss, which is directed to the face of the pleadings. Additionally, the specific language of these agreements do not serve as a shield to Plaintiffs' claims.

1

*Second*, Defendants attempt to diminish any duty owed to Plaintiffs as well as discount any emotional harm suffered by Plaintiffs.  Nevertheless, New York law imposes a clear duty on owners and managers of rented apartments to refrain from invading the reasonable expectations of privacy of their guests.  Moreover, a cause of action for emotional distress arising from the discovery of a surreptitious recording device is grounded in established precedent.

*Third*, OFS claims that this action should proceed in England or Wales pursuant to a forum selection clause in the GRA.  However, this procedural defense fails because the forum selection clause is merely permissive, rather than mandatory, and because a *forum non conveniens* motion – rather than a Rule 12(b)(3) motion – is the proper vehicle to enforce such clause.[1]

In short, none of the array of procedural and substantive defenses raised by Defendants have sufficient support in law or contract.  Accordingly, Plaintiffs should be permitted to vindicate their claims after the gross and disconcerting violation of their privacy.

---

[1]     The notion that this dispute that involves a stay in a New York apartment owned by New York residents, which was induced by advertising and marketing directed at American citizens, should be litigated in England or Wales is one that should not be taken seriously even if the proper procedural vehicle had been utilized.

2

## FACTUAL BACKGROUND[2]

Hoping for an enjoyable Fourth of July vacation in New York City, Plaintiffs rented Mr. Winick's apartment at 143 Reade Street, Apartment 3C, New York, New York 10013 (the "Apartment") through the "Onefinestay" website.  (Ex. 1, "Am Compl.," ¶ 18.)[3]  Plaintiffs were reassured of their decision by OFS' online representations that its experts carefully "handpick[]" each apartment listing as well as "visits and vets each home in person."  (*Id.*, ¶¶ 12-17.)

On the fourth night of their stay at the Apartment, to their shock and distress, Plaintiffs discovered a concealed "Amazon Cloud Cam," with its green light lit, that had apparently captured their private conversations as well as their intimate moments – including dressing and undressing.  (*See id.*, ¶¶ 29-40.)  The camera was hidden in the "back of a console cabinet under the television in the master bedroom" and was "powered on, fully operational, and apparently recording."  (*Id.*, ¶¶ 29-30.)  According to Amazon, the cameras found in the Apartment "automatically record when they are powered on and the green light is lit."  (*Id.*, ¶ 45.)  From its concealed placement, the camera "apparently commanded a view of the master bed as well as the entry to the master bathroom."  (*Id.*, ¶ 34.)

After the shocking discovery, Mr. Ho informed OFS of the hidden camera in the master bedroom.  (*Id.*, ¶ 41.)  A representative concluded that "OFS had botched its vetting and inspection of the Apartment" and "expressed to Mr. Ho that the presence of the cameras was grounds for removing the Apartment from the OFS platform."  (*Id.*, ¶¶ 42.)  OFS informed Plaintiffs that Mr. Winick confirmed the existence of the hidden camera in the master bedroom.  OFS also sent a representative to remove all of the cameras.  (*Id.*, ¶¶ 43-44.)  A reported third

---

[2]    Unless otherwise noted, the relevant factual background is taken from Plaintiffs' Amended Complaint.  The Court is required to accept all well-pleaded factual allegations as true and draws all reasonable inferences in favor of Plaintiffs.  *See Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 637 (S.D.N.Y. 2016).

[3]    Citations to "Ex. __" are to the exhibits attached to the Declaration of James Ng, Esq. filed concurrently herewith.

camera was never discovered.  (*Id.*)

After the stay in the Apartment – without adequate explanation – Mr. Winick seemed to state that he deliberated moved and concealed the camera in the master bedroom.  (*Id.*, ¶¶ 47-50.) In sworn affidavits, improperly submitted here, Mr. Winick as well as his wife *actually admit* that they *knew* cameras were installed and maintained in the Apartment during Plaintiffs' stay. (*See* Dkt. 31-4, ¶¶ 5-12; Dkt. 31-7, ¶¶ 4-6.)

Plaintiffs now bring this action in reaction to OFS' broken promises to properly "vet" and investigate the Apartment and Mr. Winick's surreptitious placement of a camera for the nefarious purpose of recording Plaintiffs.

## ARGUMENT

## I.     THE COURT SHOULD DENY DEFENDANTS' RULE 12(B)(6) MOTION

### A.     Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief <u>without</u> resolving a contest regarding its substantive merits."  *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).  On a Rule 12(b)(6) motion, "the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff."  *Mitcham*, 204 F. Supp. 3d at 637; *see also Smalls v. Jummonte*, 2010 WL 3291587, at *3 (S.D.N.Y. Aug. 13, 2010) (declining

to consider evidence outside the pleadings)

    **B.**    <u>**The GRA and AA Do Not Provide a Defense to Plaintiffs' Claims**</u>

        1.    The Court Should Not Consider the
                <u>GRA and AA on a Rule 12(b)(6) Motion</u>

Because the Apartment was rented from Mr. Winick through the OFS website, Defendants urge the Court to consider exculpatory language contained in the GRA, between OFS and Plaintiffs, and the AA, between Mr. Winick and Plaintiffs.  (*See* Dkt. 31 at 8-10, 19-20; Dkt. 31-2, ¶¶ 8.1-8.5; Dkt. 31-5 at 6.)  Defendants argue that this exculpatory language in these agreements serves to insulate them from liability arising from the discovery of the concealed camera in the Apartment.  However, the Court should not consider the GRA or AA on the Rule 12(b)(6) motion.

It is axiomatic that "a Rule 12(b)(6) motion is addressed to the face of the pleading." *Goldman v. Belden*, 754 F.2d 1059, 1065-66 (2d Cir. 1985).  "Generally, in adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to [(1)] facts stated on the face of the complaint, in [(2)] documents appended to the complaint or [(3)] incorporated in the complaint by reference…." *Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc.*, 786 F. Supp. 2d 798, 803 (S.D.N.Y. 2011) (quoting *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citations, internal quotation marks, and alterations omitted).  In other circumstances, a district court may consider "a document upon which the complaint solely relies and which is integral to the complaint…." *Id.* (citation and internal quotation marks omitted); *see also Carter v. Stanton*, 405 U.S. 669, 571 (1972) (detailing conversion of a Rule 12(b)(6) motion to a Rule 56 motion to consider extrinsic, but integral, documents).  In order for an extrinsic document to be considered on a Rule 12(b)(6) motion, it must be clear that there are "no material disputed issues of fact regarding the relevance of the document. " *Nicosia v. Amazon.com*, 834 F.3d 220,

231 (2d Cir. 2016) (citation and internal quotation marks omitted).

"A necessary prerequisite for taking into account materials extraneous to the complaint extraneous to the complaint is that the plaintiff *rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Id.* (quoting *Glob. Network Commc'ns, Inc.*, 458 F.3d at 156) (internal quotation marks omitted) (alteration in the original). It is thus improper for the Court to consider documents extrinsic and not integral to the pleading. *See Goldman*, 754 F.2d at 1066.

Consequently, the Court should disregard Defendants' reliance on the GRA or AA because they are extrinsic and not integral to the Amended Complaint. *See Meskunas v. Auerbach*, 2019 WL 719514, at *3 n. 4 (S.D.N.Y. Feb. 20, 2019) (excluding extrinsic materials submitted as exhibits on a Rule 12(b)(6) motion); *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 400 (E.D.N.Y. 2015) (considering documents quoted in the complaint, but disregarding documents not incorporated by reference or relied upon in drafting the complaint). The Amended Complaint does not attach, rely upon, or quote the GRA or AA. These agreements are not integral to Plaintiffs' claims because they arise under federal statute (18 U.S.C. § 2511), New York statute (G.B.L. § 349), or New York common-law – not contract. Therefore, consideration of any defenses under the GRA or AA is accordingly improper at this pleading stage.

2.   The GRA and AA Do Not Bar Plaintiffs' Claims

Even if the Court considered the GRA and the AA, the specific language of the respective exculpatory clauses does not bar liability for Plaintiffs' claims. Under New York law, "the general principle that contracts breaking down common-law liability and relieving persons from just penalties for their negligent or improper conduct are not favored and should not be given an enforcement beyond that demanded by their strict construction…." *Boll v. Sharp & Dohme*, 281 A.D. 568, 570 (1st Dep't 1953), *aff'd sub nom.*, *Boll v. Sharp & Dohme, Inc.*, 307 N.Y. 646

(N.Y. 1954).  Exculpatory clauses are void where they do not "plainly and precisely limit the liability of defendant for his own negligent acts."  *Alexander v. Kendall Cent. School Dist.*, 221 A.D.2d 898, 899 (4th Dep't 1995) (citation and internal quotation marks omitted).  Furthermore, courts will not enforce exculpatory clauses that purport to grant immunity for "intentional wrongdoing" or "gross negligence."  *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 385 (N.Y. 1983).

Specifically, OFS contends that Section 8 of the GRA bars Plaintiffs' common-law claims and G.B.L. § 349 claim because it purportedly shields and limits liability.  (*See* Dkt. 31 at 9-10; Dkt. 31-2, ¶ 8.2.)  However, the GRA exculpatory clauses do not extend to bar Plaintiffs' negligence claims in Count One and Count Two because it is evident from Section 3 of the GRA that the scope of the agreement only extends to Plaintiffs' *booking* of the Apartment – rather than the condition or status of the Apartment.  (*See* Dkt. 31-2, ¶ 3.1 ("In this agreement, we will: provide access to an online booking facility…suggest an accommodation agreement…collect and hold on your behalf the applicable funds….").)  It follows that any limitation of liability in OFS' booking agreement is strictly construed to not limit OFS' liability for failing to "vet" or inspect the apartment for a hidden camera.  Particularly, Section 8 of the GRA cannot exculpate OFS from liability under Count Three for reckless infliction of emotional distress because New York law does not enforce exculpatory clauses that diminish liability for "gross negligence" as a matter of law.  *See Kalisch-Jarcho, Inc.*, 58 N.Y.2d at 385.  The English choice-of-law clause is irrelevant here because none of Plaintiffs' claims arise under, or even refer, to the GRA.[4]  (Dkt. 31-2, ¶ 9.4.)

---

[4]        Moreover, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), ultimately mandates that the Court apply New York choice-of-law rules to select New York law.

For his part, Mr. Winick contends that the "Liability and Claims" section of the AA bars Plaintiffs' common-law claims and 18 U.S.C. § 2511 claim. (*See* Dkt. 31 at 15-19; Dkt. 31-5 at 6 ¶ 2.) This argument fails as well for two reasons. *First*, the AA exculpatory clause does not even purport to limit liability for the "intentional" misconduct alleged in Count Five and Count Seven. (Dkt. 31-5 at 6 ¶ 3 ("Nothing in this clause limits or excludes the liability of the Homeowner for…injury arising as a result of their *gross negligence* or *willful misconduct* or the gross negligence of [sic] willful misconduct of their agents or employees." (emphasis added)).) *Second*, the AA exculpatory clause does not disclaim liability for Mr. Winick's negligence under Count Six because it only limits liability for "loss" – in contrast to the "injury" of emotional distress – which arose when Plaintiffs discovered their most intimate moments were surreptitiously recorded by a hidden camera.

**C.**     **Plaintiffs Have Stated Viable Claims against OFS**

      1.     Count Two (Negligent Infliction of Emotional Distress)

New York law has recognized negligent infliction claims where a defendant breached a duty to safeguard the plaintiff's expectations of privacy, thereby permitting plaintiff to be surreptitiously viewed during certain intimate moments, which resulted in plaintiff's emotional distress thereafter. *See Topor v. State*, 176 Misc.2d 177 (Ct. Cl. 1997) (awarding damages for emotional distress arising when a plaintiff was improperly observed showering in a public facility).

OFS contends that the negligent infliction of emotional distress claim fails because (1) it owed no duty to "investigate Winick," (2) the damages claimed are consequential rather than direct, and (3) Plaintiff's claims lack the "guarantee of genuineness" because Mr. Winick has submitted an affidavit that no footage was captured by the concealed camera. (Dkt. 31 at 12.) However, established precedent dictates that Plaintiffs have plead a viable claim.

*First*, New York courts have imposed a duty on managers to remove concealed cameras that might record guests during their private moments.  Specifically, G.B.L. § 395-b(2-a) provides:

> A person is guilty of unlawfully installing or maintaining a video recording device when, being the owner or manager of any premises, he knowingly permits or allows such a device to be installed or maintained in or upon such premises, for purpose of surreptitiously recording a visual image of the interior of any fitting room, restroom, toilet, bathroom, washroom, shower, or any other room assigned to guests or patrons in a motel, hotel or inn.

While G.B.L § 395-b(2-a) "does not create an independent cause of action for persons harmed by a violation of its provisions," New York courts have established that the statute does "set forth a *duty owed directly to the plaintiff that may serve as a basis for a cause of action for the negligent infliction of emotional distress*."  *Dana v. Oak Park Marina, Inc.*, 230 A.D.2d 204, 208 (4th Dep't 1997) (emphasis added); *accord Hering v. Lighthouse 2001, LLC*, 21 A.D.3d 449, 450 (2d Dep't 2005) (reaffirming duty under G.B.L. § 395-b(2-a)); *Salamone v. Oak Park Marina, Inc.*, 259 A.D.2d 987, 988 (4th Dep't 1999) (reaffirming duty under G.B.L. § 395-b(2-a)). Consequently, OFS, as the manager of the Apartment, breached its duty to investigate and remove the concealed camera in the master bedroom before it captured Plaintiffs' intimate moments.

*Second*, the contention that OFS' failure to investigate and uncover the concealed camera constitutes consequential harm, rather than direct harm, is a distinction without any relevance. Merely having "constructive notice" of a condition that will lead to a violation of G.B.L § 395-b, and neglecting to take appropriate steps, is sufficient causation to impose liability.  *See Hering*, 21 A.D.3d at 451 (find that "constructive notice of the holes in the ladies' restroom, that the holes were used, or intended to be used as peepholes, and that the incident proximately caused the alleged damage" was sufficient for a negligent infliction claim).  Ultimately, it was OFS'

failure to properly "vet" the Apartment provides sufficient causation for the invasion of Plaintiffs' privacy by the concealed camera in the master bedroom.

*Third*, OFS claims that Mr. Winick's sworn statement that no footage exists vitiates the negligent infliction claim.  As an initial matter, it is not proper for the Court consider the affidavits submitted in support of this Motion to Dismiss.  *See Robinson v. Town of Kent, N.Y.*, 2012 WL 3024766, at *4 (S.D.N.Y. July 24, 2012) (disregarding affidavits submitted by parties when ruling on a Rule 12(b)(6) motion); *Aleem v. Experience Hendrix, L.L.C.*, 2017 WL 3105870, at *3 (S.D.N.Y. July 20, 2017) (disregarding six declarations in deciding a Rule 12(b)(6) motion).  Beyond that, New York law does not require that any footage exist, but merely requires that a concealed camera be maintained for the purpose of capturing intimate moments.  *Adams v. Oak Park Marina Inc.*, 261 A.D.2d 903, 903 (4th Dep't 1999) ("With respect to negligent infliction of emotional distress, the underlying statutory duty pursuant to General Business Law § 395-b(2-a) is breached by the installation of a video camera; *whether a plaintiff was actually videotaped is not an essential element of the offense*."  (emphasis added); *Salamone*, 259 A.D.2d at 988 ("Contrary to the [lower] court's determination, *a plaintiff need not prove that he or she was in fact videotaped in order to recover*…." (emphasis added)). Ultimately, the mere allegation that a concealed camera was purposely maintained to capture Plaintiffs dressing and undressing in the master bedroom is adequate to sustain a negligent infliction claim.

2.      <u>Count Three (Reckless Infliction of Emotional Distress)</u>

To state a claim for reckless infliction of emotional distress, the plaintiff must allege "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (N.Y. 1993).

OFS claims that Plaintiffs' reckless inflction claim is unsupported because (1) there has been no assertion of "extreme or outrageous conduct," and (2) there is no assertion of "severe emotional distress."  These contentions merely ignore Plaintiffs' allegations in the Amended Complaint.

*First*, the simple placement of a concealed camera to capture Plaintiffs in the nude in the master bedroom patently satisfies the "extreme or outrageous conduct" element.  *See Sawicka v. Catena*, 79 A.D.3d 848, 849-50 (2d Dep't 2010) ("Here, [defendant's] conduct in installing a video camera in a workplace restroom in order to surreptitiously view and record the plaintiffs while they used the restroom is conduct which is unquestionably outrageous and extreme."); *Dana*, 230 A.D.2d at 209 (holding surreptitious videotaping of patrons and guests in various stages of undress constituted "extreme or outrageous conduct").  Clearly, the "extreme or outrageous" element has been satisfied.

*Second*, at the pleading stage, Plaintiffs must merely allege that they have suffered "severe emotional distress" as the result of having their intimate moments captured by a concealed camera.  *Dana*, 230 A.D.2d at 209 (holding allegations of "harm[], humiliat[ion] and extreme mental anguish and distress" as sufficient to sustain a reckless inflction claim); *Salamone*, 259 A.D.2d at 988 ("A plaintiff may recover for the reckless inflction of emotional distress if it is shown that he or she suffered emotional distress….").  Indeed, "severe emotional distress" is adequately asserted by the allegation that Plaintiffs suffered "severe emotional distress, including but not limited to, humiliation, shock, embarrassment, intimidation, physical distress and injury, fear, stress and other damages."  (Ex. 1, ¶ 80.)

3.    Count Four (Violation of G.B.L. § 349)

In order to state a claim under G.B.L. § 349, "a plaintiff must allege both a deceptive act or practice directed toward customers[,] and that such act or practice resulted in actual injury to a plaintiff."  *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200,

205-06 (N.Y. 2004). OFS contends that the G.B.L. § 349 claim fails because (1) there is no assertion that an "allegedly deceptive act caused the injury complained of," and (2) there is no assertion that "similarly-situated customers" would be harmed by any alleged deceptive or false practices. (*See* Dkt. 31 at 15.) Once again, OFS flatly disregards Plaintiffs' allegations in the Amended Complaint.

*First*, Plaintiffs have specifically identified deceptive or misleading statements that caused them to detrimentally rely on OFS' false promises. Specifically, on its website, OFS represents that it "carefully" selects its apartment listings. (Ex. 1, ¶ 82.) OFS promises that it is "the only company that visits and vets every home in person," and that "each home is prepared to our exacting hospitality standards." (*Id.*) OFS states that they "visit[] each home in person to take accurate photographs, detail[] room configurations and home truths, so you [the renter] can book with the same confidence you have in the best hotels." (*Id.*, ¶ 83.) Given that Plaintiffs relied on the deceptive representations that OFS would "vet" the Apartment to the standards of the "best hotels," Plaintiffs were harmed because even a reasonable "vetting" and investigation would have uncovered the concealed camera that ultimately captured their private moments in the master bedroom. Indeed, an OFS representative stated to Mr. Ho that OFS had "botched" its vetting and inspection protocols. (Ex. 1, ¶ 42.)

*Second*, "similarly-situated" customers may be harmed by OFS' false promises to "vet" and investigate listings to the standards of the "best hotels." It is evident that customers who view OFS' promises online may also be deceived into relying on the expectation that the apartment they rent through OFS will be properly vetted, only to find that OFS "botched" its investigation of the listing and permitted the customer to be videotaped while nude.

*Finally*, the case law cited by OFS is entirely inapplicable to this case.  In *Gale v. International Bus. Machines Corp.*, 9 A.D.3d 446 (2d Dep't 2004), the G.B.L. § 349 claim failed because the plaintiff never saw any of the alleged misleading statements before purchasing the defective device.  Here, Plaintiffs clearly allege they relied on OFS' false promises to investigate the Apartment.  *Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166 (N.Y. 2013), has no application to this case because it discusses G.B.L. § 395-a, which does not authorize an express or implied private right of action, whereas this case involves G.B.L. § 395-b, which does indeed grant a private right of action.

      D.      **<u>Plaintiffs Have Stated Viable Claims against Mr. Winick</u>**

          1.     <u>Count Five (Intentional Infliction of Emotional Distress)</u>

"The elements of intentional infliction of emotional distress are (1) extreme and outrageous conduct; (2) the intent to cause…severe emotional distress; (3) causation; and (4) severe emotional distress."  *Brunache v. MV Transp., Inc.*, 151 A.D.3d 1011, 1014 (2d Dep't 2017).  Mr. Winick contends that the intentional infliction of emotional distress claim fails because (1) there are insufficient allegations of "extreme and outrageous conduct," and (2) there is no harm because there is "no proof that any footage ever existed."  (*See* Dkt. 31 at 16.)  Nevertheless, established precedent provides that Plaintiffs' maintain a viable claim.

*First*, as previously noted, the simple placement of a concealed camera to capture Plaintiffs in the nude in the master bedroom patently satisfies the "extreme or outrageous conduct" element.  *See Doe v. Doe*, 2017 WL 3025885, at *5 (S.D.N.Y. July 14, 2017) ("Videotaping a person when she has a reasonable expectation of privacy is 'extreme and outrageous' even if she is neither identified or identifiable in the tape."); *Sawicka*, 79 A.D.3d at 849-50; *Dana*, 230 A.D.2d at 209.

13

*Second*, as an initial matter, the Court should disregard the affidavits submitted in support of this Motion to Dismiss. *See Robinson*, 2012 WL 3024766; *Aleem*, 2017 WL 3105870. Moreover, New York law provides that the existence of footage from a concealed camera is not an "essential element" to an emotional distress claim.  *See Adams*, 261 A.D.2d at 903; *Salamone*, 259 A.D.2d at 988.  The mere allegation that a concealed camera was purposely maintained to capture Plaintiffs dressing and undressing in the master bedroom is adequate to sustain this cause of action.

### 2.   Count Six (Negligent Infliction of Emotional Distress)

Once again, New York law recognizes negligent infliction claims where a defendant breached a duty to safeguard the plaintiff's expectations of privacy, permitting plaintiff to be surreptitiously viewed during his or her intimate moments, which resulted in plaintiff's emotional distress thereafter.  *See Topor*, 176 Misc.2d 177 (awarding damages negligent infliction of emotional distress).  Mr. Winick submits that Plaintiffs' negligent infliction of emotional distress claim fails because (1) he owed no duty under G.B.L. § 395-b(2-a), (2) there has been no "guarantee of genuineness" because there has been no allegation that anyone accessed the video footage, and (3) Plaintiffs have insufficiently alleged harm.  (*See* Dkt. 31 at 17-18.)  However, New York law provides that Plaintiffs maintain a cognizable intentional infliction claim against Mr. Winick.

*First*, as previously noted, New York courts have recognized that owners of rented premises owe a duty to prevent the private moments of their "guests and patrons" from being surreptitiously videotaped.  *Dana*, 230 A.D.2d at 208; *Hering*, 21 A.D.3d at 450; *Salamone*, 259 A.D.2d at 988.  Consequently, Mr. Winick breached a duty to Plaintiffs by maintaining a concealed camera that captured them dressing and undressing in the master bedroom.

*Second*, as noted above, the fact that there is no allegation that anyone accessed the video footage does not undermine the negligent infliction claim. New York law provides that the existence of footage from a concealed camera is not an "essential element" to an emotional distress claim. *See Adams*, 261 A.D.2d at 903; *Salamone*, 259 A.D.2d at 988. The mere allegation that a concealed camera was purposely maintained to capture Plaintiffs dressing and undressing in the master bedroom is adequate to sustain this claim.

*Third*, yet again, Plaintiffs have alleged sufficient harm to support the negligent infliction claim. Plaintiffs must merely allege that they have suffered "severe emotional distress" as the result of having their intimate moments captured by a concealed camera. *Dana*, 230 A.D.2d at 209; *Salamone*, 259 A.D.2d at 988. Indeed, "severe emotional distress" is adequately asserted by the allegation that Plaintiffs suffered "severe emotional distress, including but not limited to, humiliation, shock, embarrassment, intimidation, physical distress and injury, fear, stress and other damages." (Ex. 1, ¶ 80.)

### 3.   Count Seven (Violation of 18 U.S.C. § 2511)

The Federal Wiretapping Act, 18 U.S.C. § 2511(1)(a), provides that it is unlawful for "any person" to "intentionally intercept, endeavors to intercept…any wire, oral, or electronic communication…." Additionally, that statute provides a private right of action to any person whose *oral* communications were intercepted. 18 U.S.C. § 2511(a) ("[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity…which engaged in that violation such relief as may be appropriate."). This Court has repeatedly recognized this statutory private right of action against any person that intentionally intercepts *oral* communications. *Sell It Social, LLC v. Strauss*, 2018 WL 2357261, at *14 (S.D.N.Y. Mar. 8. 2018); *Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*, 2017 WL 1215753, at

*9 (S.D.N.Y. Mar. 31, 2017).

Incredibly, Mr. Winick contends that "[n]o private cause of action exists under 18 U.S.C. § 2511." (Dkt. 31 at 18.) Citing 18 U.S.C. § 2511(5)(a)(i), Mr. Winick submits that a civil action for an intercept via a private video is reserved to the Federal Government. (Dkt. 31 at 18-19.) However, Section 5(a)(i) is completely irrelevant to Plaintiffs' claim. Indeed, Section 5(a)(i) confers a civil cause of action to the Federal Government where the intercepted communication consists of "a private satellite video communication." Count Seven alleges that Mr. Winick "via use of the camera located in the master bedroom of the Apartment, intentionally intercepted and/or endeavored to intercept the oral communications of Plaintiffs while Plaintiffs were staying in the Apartment." (Ex. 1, ¶ 103.) Thus, Section 5(a)(i) is inapplicable because Plaintiffs allege that Mr. Winick intercepted, or sought to intercept, their *oral*, rather than a private satellite video, communications.

## II.    THE COURT SHOULD DENY DEFENDANTS' RULE 12(B)(3) MOTION

### A.    <u>Legal Standards</u>

"When a motion to dismiss for 'improper venue' is made pursuant to Rule 12(b)(3), the plaintiff has the burden of pleading venue." *Philippe Nyc I LLC v. Philippe West Coast, LLC*, 2016 WL 1183669, at *6 (S.D.N.Y. Mar. 24, 2016) (citing *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006)). "To defeat the motion, plaintiff[] need only make a prima facie showing of venue." *Id.* (citations omitted). "In analyzing whether the plaintiff has made the requisite prima facie showing that venue is proper, we view all facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

"In general, to obtain dismissal based on a forum selection clause the party seeking enforcement of the clause must demonstrate that: (1) the clause was reasonably communicated to the party resisting enforcement; (2) *the clause was mandatory and not merely permissive*; and (3)

the claims and parties involved in the suit are subject to the forum selection clause." *Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009) (citing *Phillips*, 494 F.3d at 383-84) (emphasis added).

### B.     Venue is Proper Despite the GRA's Permissive Forum Selection Clause

28 U.S.C. § 1391(b)(2) provides that a "civil action may be brought in…a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…."  Since it is undisputed that Plaintiffs allegations arise from their stay in the Apartment, which is situated in this forum, venue is proper here.  (*See* Ex. 1, ¶¶ 8, 11, 18, 29-30, 35; Dkt. 31 at 1-3.)

Nevertheless, OFS contends that venue is improper because Plaintiffs' claims against OFS should be adjudicated in "England or Wales" pursuant to the GRA's forum selection clause. (Dkt. 31 at 20.)  The forum selection clause provides: "Any proceedings arising out of or in connection with this agreement *may* be brought in any court of competent jurisdiction in England or Wales."  (Dkt. 31-2, ¶ 9.5 (emphasis added).)  Given that the forum selection clause is merely permissive, rather than mandatory, this Court may retain jurisdiction of this case and dismissal is not warranted.  *Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011) ("A permissive forum selection clause only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate." (citation and internal quotation marks omitted)).[5]

### C.     OFS' Motion to Enforce the GRA's Forum Selection Clause is Improper

Even if the forum selection clause contained in the GRA were mandatory – which it is not – and even of Plaintiffs' claims arose under the GRA – which they do not – this Court would still be obligated to deny the Rule 12(b)(3) motion.  In *Atlantic Marine Construction Co. Inc. v.*

---

[5]     Even if the clause were mandatory, there is significant question whether the forum selection clause would be applicable to Plaintiffs' claims because they do not arise under the GRA.  (*See* Dkt. 31-2, ¶ 9.5.)

*United States District Court for the Western District of Texas*, 571 U.S. 49 (2013), the Supreme Court held that it is improper for a litigant to seek to enforce a forum selection clause through a Rule 12(b)(3) motion.  The underlying rationale is that a mandatory forum selection clause does not make a venue "improper," but rather contractually obligates litigants to proceed in a previously designated forum.  *Id.*  Thus, the Supreme Court expressly held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is the doctrine of *forum non conveniens*," rather than a Rule 12(b)(3) motion."  *Id.* at 60-61.  After all, a *forum non conveniens* motion provides a more appropriate "balancing-of-interests" inquiry that weighs the interests of the litigants and the disparate forums.  *See id.*  Consequently, the Court should deny OFS' application to enforce the GRA's forum selection clause because it was improperly submitted as a Rule 13(b)(3) motion, rather than a *forum non conveniens* motion.

## CONCLUSION

For all of the above reasons, Plaintiffs respectfully requests that the Court deny Defendants' First Motion to Dismiss the Amended Complaint.  In the event that the Amended Complaint is dismissed, Plaintiffs respectfully request leave of the Court to re-plead.

Dated:  New York, New York
     March 29, 2019

O'BRIEN LLP

 */s/ James Ng*        
Sean O'Brien, Esq.
A.J. Monaco, Esq.
James Ng, Esq.
750 Lexington Avenue 25th Floor
New York, New York 10022
Tel:  (212) 729-9243
sobrien@obrienllp.com
ajmonaco@obrienllp.com
jng@obrienllp.com

*Attorneys for Plaintiffs*

18