| | |
|---|---|
| WINSON HO and JENNIFER BAGLEY,<br><br>Plaintiffs,<br><br>v.<br><br>PIERPONT RESERVATIONS LIMITED and<br>STEVEN E. WINICK,<br><br>Defendants. | **Civil Action No.:**<br>**18-cv-9940 (DAB) (SN)** |

## MEMORANDUM DECISION DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(3) AND 12(b)(6)

McMahon, CJ:

Plaintiffs Winston Ho and Jennifer Bagley bring this action against Pierpont

Reservations, Ltd. ("Onefinestay" or "OFS") and Steven Winick. Plaintiffs allege that after

staying for several nights in an apartment (the "Apartment") they had rented from Defendant

Winick, Plaintiffs discovered a concealed, operational, and powered on camera in the

Apartment's master bedroom. Plaintiffs allege that this camera had apparently captured

Plaintiffs' intimate moments through audio and video recording.

Plaintiffs found Mr. Winick's apartment through Onefinestay's website, on which

Defendant OFS promised to "visit and vet every home in person," and to provide its customers

with "Home Truths," so that renters "can book with the same confidence [they] have in the best

hotels." Plaintiffs allege that the surreptitious recording of Plaintiffs was done in breach of

OFS's representations that its listed apartments would be properly vetted.

Against Defendant OFS, Plaintiffs allege one count of negligence, one count of negligent infliction of emotional distress, one count of reckless infliction of emotional distress, and one count for a violation of New York General Business Law ("GBL") § 349.

Against Defendant Winnick, Plaintiffs allege one count of intentional infliction of emotional distress, one count of negligent infliction of emotional distress, and one count for a violation of 18 U.S.C. § 2511.

Defendants move to dismiss the complaint pursuant to Rule 12(b)(3) and 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants' motion to dismiss pursuant to Rule 12(b)(3) is denied.

As to Defendant OFS, Defendants' motion is granted with respect to Count III for reckless infliction of emotional distress and denied with respect to Counts I, II, IV.

As to Defendant Winick, Defendants' motion is denied in its entirety.

## FACTUAL BACKGROUND

### I. The Parties

Plaintiffs Ho and Bagley are married individuals domiciled in Texas.

Defendant Pierpont Reservations Limited ("Onefinestay" or "OFS") is a hospitality company organized under the laws of the United Kingdom, with a registered office address at Laser House, 132-140 Goswell Road, London, England, EC1V 7DY. Plaintiffs allege upon information and belief, that OFS conducts business in New York State, and maintains offices at 601 West 26th Street, Suite 300, New York, NY 10001.

Defendant Steven E. Winick ("Winick") is a natural person domiciled in New York.

## II.     One Fine Stay's Service Offering

OFS describes itself as "the world's first unhotel," and "a hospitality brand like no other."

Media have described OFS as an "upmarket Airbnb," and a "Super-Fancy Airbnb." (Dkt. No. 31,

Am. Compl. ¶ 13.)

Using OFS's service, homeowners contract with OFS to offer their homes for rent. OFS

maintains a website, where prospective renters can view those properties. The prospective renters

then use the OFS website to select a dwelling and complete the booking. (*Id.* ¶ 15.)

OFS's service is selective. The company guarantees that it "carefully" selects each

residence that is offered for rent on its website. As such, OFS promises that it is "the only

company that visits and vets every home in person," photograph[s] each home, and that "each

home is prepared to our exacting hospitality standards." (*Id.* ¶ 16.)

Regarding its New York City offerings, OFS states that each of the properties offered for

rent was "handpicked" by its "team of experts." Moreover, OFS promises to make each

prospective renter aware of any "Home Truths" concerning the properties that it offers through

its website. According to OFS, they have "visited each home in person to take accurate

photographs, detailed room configurations and home truths, so you [the renter] can book with the

same confidence you have in the best hotels." OFS promises to highlight any such Home Truth

on the listing for each of its New York City properties, and to "make sure" that the renter is

aware of any such Home Truth when booking. (*Id.* ¶ 17.)

## III.     The Booking

On June 13, 2018, Plaintiffs used the OFS website to book Winick's apartment, located

in the TriBeCa neighborhood of Manhattan (the "Apartment"), for a trip that was to last from

June 30, 2018 through July 7, 2018. (*Id.* ¶ 18.)

As per OFS policy and practice, no written agreement exists directly between Plaintiffs and the Homeowners. Rather, the rental of the property was conducted entirely through OFS. Thus, the booking of and payment for the property was made by Plaintiffs solely through the OFS platform. (*Id.* ¶¶ 19-20.)

After booking the Apartment, Plaintiffs were sent a booking record. The booking record contained a list of "Home Truths," for the Apartment. The Home Truths did not mention that the apartment contained any video or audio recording equipment. (*Id.* ¶ 23.)

At no time did OFS inform Plaintiffs that a concealed video webcam was located in the master bedroom of the Apartment, or that any such webcam was powered on and capable of capturing video and audio recordings of Plaintiffs. (*Id.* ¶ 24.)

At no time did Winick inform Plaintiffs that a concealed video webcam was located in the master bedroom of the Apartment, or that any such webcam was powered on and capable of capturing video and audio recordings of Plaintiffs. (*Id.* ¶ 25.)

## IV.    The Guest Reservation Agreement's Forum Selection Clause

On or about June 14, 2018, Plaintiffs entered into a Guest Reservation Agreement ("GRA") with OFS to book the Apartment. (*See* GRA, Ex. A to Liyanage Aff.) The GRA stated that "Any proceedings arising out of or in connection with this agreement may be brought in any court of competent jurisdiction in England or Wales." (*Id.* at § 9.5)

## V.    The Stay

Plaintiffs arrived at the Apartment for their stay on June 30, 2018. Upon arrival, they were met by an OFS representative who showed them into the Apartment. (*Id.* ¶ 26.)

On the evening of July 4, 2018, after Plaintiffs had stayed in the Apartment for four nights, Ho noticed a small green light coming from the back of a cabinet – situated directly opposite the bed – under the television in the master bedroom. (*Id.* ¶ 29.)

The green light belonged to a powered on, fully operational, and apparently recording webcam, placed in the back of the shelf, in a location where it was difficult to detect on casual inspection. (*Id.* ¶¶ 30, 32.)

Mr. Ho realized that the webcam was a type of camera that was capable of capturing audio and video imagery in the dark. (*Id.* ¶ 31.)

From its placement inside the console, the webcam apparently commanded a view of the master bed as well as the entry to the master bedroom. (*Id.* ¶ 34.)

Plaintiffs had used these portions of the Apartment to dress and undress for four days. Moreover, Plaintiffs engaged in private and intimate conversations while in these locations. Plaintiffs allege that they performed these activities in full view of the webcam, while the webcam was powered on and, upon information and belief, captured video and audio recordings of Plaintiffs. (*Id.* ¶ 35.)

Plaintiffs allege upon information and belief, that video clips created by an "Amazon Cloud Cam" are available to a subscriber – in this case Winick – for a minimum of 24 hours, and potentially for longer. (*Id.* ¶ 36.)

## VI.    Defendants' Response

The Amended Complaint further alleges that, subsequent to the discovery of the hidden recording device, Mr. Ho contacted OFS about the camera. In response, OFS sent an employee to inspect the Apartment.

After the inspection, the OFS employee told Mr. Ho that OFS should have disclosed the existence of the cameras in the Apartment, and that OFS had botched its vetting and inspection of the Apartment. The OFS employee also expressed to Mr. Ho that the presence of the cameras was grounds for removing the Apartment from the OFS platform. (*Id.* ¶¶ 41-42).

The OFS employee also told Plaintiffs that OFS had reached out to the homeowner of the Apartment – now known to be Winick – who confirmed the location of the two webcams that Plaintiffs had found, including the hidden camera in the master bedroom. (*Id.* ¶ 43.)

The OFS employee also represented that Winick told them that none of the cameras in the Apartment was "recording," which, Plaintiffs allege upon information and belief, was incorrect, as cameras of the type found in the Apartment automatically record when powered on and the green light is lit. When pressed by Mr. Ho as to why the cameras were powered on and operational, Defendants' then told Plaintiffs that Winick claimed that the cameras were not "actively recording." (*Id.* ¶ 45.)

Plaintiffs allege, upon information and belief, that the assertion that the cameras were not recording is false. According to Amazon's description, the cameras automatically record and the files generated thereby are stored for a minimum of 24 hours and up to 30 days. The cameras also provide live-view as well as motion recording and alert the user – in this case Winick – when the camera detects motion. (*Id.* ¶ 46.)

Mr. Ho again asked OFS to explain why the cameras were powered on and operational, and why the camera in the master bedroom was hidden, rather than being in plain view. OFS stated that Winick claimed to have "remembered to move the camera in the master bedroom" and "forgotten to store away the other two cameras." Thus, by claiming that he "moved the

camera in the master bedroom," Winick appeared to be stating that he deliberately moved the camera to the hidden location. (*Id.* ¶ 47.)

On August 6, 2018, over a month after Plaintiffs brought the matter to OFS's attention, OFS provided Plaintiffs with an unsworn letter from Winick's attorney stating merely that "there is no audio or video recording of [Plaintiffs] at any time." (*Id.* ¶ 49)

Dissatisfied with that response, Plaintiffs again requested an explanation about the placement of the camera in the master bedroom, and an assurance that Plaintiffs had never been recorded, or that if they had been recorded, that any such recording had been destroyed. Plaintiffs allege that neither OFS nor Winick has ever provided an explanation as to why the camera was placed in a hidden location in the master bedroom or stated unequivocally that Plaintiffs were never recorded. (*Id.* ¶ 50.)

## VII.    The Lawsuit and Procedural Background

Plaintiffs filed an Amended Complaint on January 15, 2019. (Dkt. No. 30.)

As against Defendant OFS, Plaintiffs brings claims in negligence, negligent infliction of emotional distress, reckless infliction of emotional distress, and for violation of New York General Business Law ("GBL") § 349. (Am. Compl. ¶¶ 52-88.)

As against Defendant Winick, Plaintiff brings claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and for a violation of 18 U.S.C. § 2511. (*Id.* ¶¶ 89-110.)

OFS and Winick both move to dismiss pursuant to Rules 12(b)(3) and 12(b)(6).

## DISCUSSION

### I.    Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

On a Rule 12(b)(6) motion, "the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff." *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 637 (S.D.N.Y. 2016).

### II.    The Court Will Not Consider the GRA and AA on a Rule 12(b)(6) Motion

Because Plaintiffs rented the Apartment from Mr. Winick through the OFS website, Defendants urge the Court to consider exculpatory language contained in the GRA, between OFS and Plaintiffs, and the Accommodation Agreement ("AA"), between Mr. Winick and Plaintiffs. (*See* Dkt. No. 31 at 8-10, 19-20; Dkt. No. 31, Ex. 2, PP 8.1-8.5; Dkt. No. 31, Ex. 5 at 5.)

Defendants argue that this exculpatory language shields them from liability arising from the discovery of the concealed cameras in the apartment. However, the Court will not consider the GRA or AA on the Rule 12(b)(6) motion; neither will I, in an exercise of discretion, convert this motion to one for summary judgment, especially as there has been no discovery.

It is well-settled that "a Rule 12(b)(6) motion is addressed to the face of the pleading." *Goldman v. Belden*, 754 F.2d 1059, 1065-66 (2d Cir. 1985). "Generally, in adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to [1] facts stated on the face of

the complaint, in [2] documents appended to the complaint, or [3] incorporated in the complaint by reference...." *Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc,* 786 F. Supp. 2d 798, 803 (S.D.N.Y. 2011) (quoting *Leonard F. v. Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir. 1999) (citations, internal quotation marks, and alterations omitted).

It is true that a district court may consider "a document upon which the complaint solely relies, and which is integral to the complaint...." *Id.* (citation and internal quotation marks omitted). However, in order to consider an extrinsic document on a Rule 12(b)(6) motion, it must be clear that there are "no material disputed issues of fact regarding the relevance of the document." *Nicosia v. Amazon.com,* 834 F.3d 220, 231 (2d Cir. 2016) (citation and internal quotation marks omitted).

"A necessary prerequisite for taking into account materials extraneous to the complaint is that the plaintiff *rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Id.* (quoting *Glob. Network Commc'ns, Inc.,* 458 F.3d at 156 (internal quotation marks omitted) (alteration in original). It is thus improper for the Court to consider documents extrinsic and not integral to the pleading. *See Goldman,* 754 F.2d at 1066.

Here, the Amended Complaint does not attach, rely upon, or quote from the GRA or AA. Plaintiffs' claims arise under a federal statute (18 U.S.C. § 2511), a New York statute (G.B.L. § 349), and New York tort law. They do not sound in contract. Plaintiffs do not rely on the terms of effects of the contract in bringing their claims. Therefore, these agreements are not integral to the Complaint. Consideration of any defenses under the GRA or AA is accordingly improper at this pleading stage. Consequently, the court will disregard Defendants' reliance on the GRA or AA. *See Meskunas v. Auerbach,* 2019 WL 719514, at *3 n. 4 (S.D.N.Y. Feb. 20, 2019) (excluding extrinsic materials submitted as exhibits on a Rule 12(b)(6) motion); *Lopez-Serrano*

*v. Rockmore*, 132 F. Supp. 3d 390, 400 (E.D.N.Y. 2015) (considering documents quoted in the complaint, but disregarding documents not incorporated by reference or relied upon in drafting the complaint).

## III.    Claims against OFS

### A.    Motion to Dismiss Count II: Negligent Infliction of Emotional Distress is DENIED

A cause of action to recover damages for negligent infliction of emotional distress requires a plaintiff to show a breach of a duty owed to him which unreasonably endangered his physical safety or caused him to fear for his own safety. *See Sacino v. Warwick Valley Cent. School Dist.*, 29 N.Y.S.3d 57, 60 (Sup. Ct. N.Y 2016).

OFS moves to dismiss Count II for negligent infliction of emotional distress on the grounds that (1) it owed no duty to "investigate Winick," (2) the damages claimed are consequential rather than direct, and (3) Plaintiffs' claims lack the "guarantee of genuineness" because Mr. Winick has submitted an affidavit that no footage was captured by the concealed camera. (Dkt. No. 31 at 12.)

For the following reasons, Defendants' motion is denied.

1.    Plaintiffs have made a prima facie case that Defendants owed a duty to Plaintiffs.

New York law imposes a duty on property managers to remove concealed cameras that might record guests during their private moments. Specially, G.B.L. § 395-b(2-a) provides:

> A person is guilty of unlawfully installing or maintaining a video recording device when, being the owner or manager of any premises, he knowingly permits or allows such a device to be installed or maintained in or upon such premises, for the purpose of surreptitiously recording a visual image of the interior of any fitting room, restroom, toilet, bathroom, washroom, shower, or any other room assigned to guests or patrons in a motel, hotel or inn.

While Defendants are correct that G.B.L. § 395-b(2-a) "does not create an independent cause of action for persons harmed by a violation of its provision," New York courts have established that the statute "set[s] forth a duty owed directly to the plaintiff that may serve as a basis for a cause of action for the negligent infliction of emotional distress." *Dana v. Oak Park Marina, Inc.*, 230 A.D.2d 204, 208 (4th Dep't 1997); *accord Hering v. Lighthouse 2001, LLC*, 21 A.D.3d 449, 450 (2d Dep't 2005); *Salamone v. Oak Park Marina, Inc.*, 259 A.D.2d 987, 988 (4th Dep't 1999).

Plaintiffs have pleaded a prima facie case of negligent infliction of emotional distress by pleading that OFS is a manager of the Apartment that "leases, offers to lease, places for rent, solicits listing for places for rent, solicits prospective tenants and/or collects rent from real property in exchange for financial remuneration," (Am. Compl. ¶¶ 63-66); that breached its duty to Plaintiff by conducting "no or an inadequate background investigation of the owners of the Apartment, and engaged in no reasonable or an inadequate investigation and vetting of the Apartment" and by failing to remove the concealed camera in the private bedroom before it could record Plaintiffs (*id.* ¶¶ 67-69). The GBL may not create the cause of action, but it creates the legal duty on which the cause of action resides.

2. Plaintiffs have alleged direct, rather than consequential, harm.

Defendants argue that because "the only negligence alleged against [OFS] is the negligence in failing to investigate Winick .... Any alleged harm from Winick's Cameras would therefore be a ***consequential*** result of [OFS's] claimed negligence, rather than direct." (Dkt. No. 31, Def. Mem. at 12 (emphasis in original).)

This argument fails. As pled, OFS's failure to investigate and uncover the concealed camera constitutes direct, rather than consequential, harm.

Under New York law, merely having "constructive notice" of a condition that will lead to a violation of G.B.L. § 395-b, and neglecting to take appropriate steps, provides sufficient causation to impose liability. *See Hering*, 21 A.D.3d at 451 (finding that "constructive notice of the holes in the ladies' restroom, that the holes were used, or intended to be used as peepholes, and that the incident proximately caused the alleged damage" was sufficient for a negligent infliction of emotional distress claim).

In the instant case, Plaintiffs allege that OFS breached its duty to Plaintiffs by failing to properly "vet" the Apartment. Plaintiffs further allege that this failure to vet resulted in OFS not finding concealed cameras, which it had a duty to remove. As pled, this dereliction of duty proximately caused the precise harm Plaintiffs suffered -- being viewed, in extremely private circumstances, by a concealed camera in a home that OFS should have properly vetted. This sufficiently pleads causation for the invasion of Plaintiffs' privacy by the concealed camera in the master bedroom.

3. Defendants' affidavits do not defeat Plaintiffs' "guarantee of genuineness."

OFS claims that Mr. Winick's sworn statement that no footage exists vitiates the negligent infliction claim "because no footage was captured by the video cameras, as has been confirmed by Amazon." (Def. Mem. at 12.)

As a threshold matter, it is improper for the Court to consider the affidavits submitted in support of this Motion to Dismiss. *See Robinson v. Town of Kent, N.Y.*, 2012 WL 3024766, at *4 (S.D.N.Y. July 24, 2012) (disregarding affidavits submitted by parties when ruling on a Rule 12(b)(6) motion); *Aleem v. Experience Hendrix, L.L.C.*, 2017 WL 3105870, at *3 (S.D.N.Y July 20, 2017) (disregarding declarations in deciding a Rule 12(b)(6) motion).

Most important, however, to impose liability, New York law merely requires that a concealed camera be maintained for the purpose of capturing intimate moments -- not that any footage actually exist. *Adams v. Oak Park Marina, Inc.*, 261 A.D.2d 903, 903 (4th Dep't 1999) ("With respect to negligent infliction of emotional distress, the underlying statutory duty pursuant to General Business Law § 395-b(2-a) is breached by the installation of a video camera; whether a plaintiff was actually videotaped is not an essential element of the offense."); *Salamone*, 259 A.D.2d at 988 ("Contrary to the [lower] court's determination, a plaintiff need not prove that he or she was in fact videotaped in order to recover....")

Ultimately, Plaintiffs' allegation that a concealed camera was purposely maintained to capture Plaintiffs' private moments in a private area is adequate to sustain a negligent infliction of emotional distress claim. The harm Plaintiffs allege stems from being viewed surreptitiously even if no footage currently exists. Whether any footage currently exists or was stored at the time is simply not relevant to whether Plaintiffs' NIED claim should be dismissed.

Defendants' motion to dismiss Count II of the Amended Complaint is denied.

B. *Motion to Dismiss Count III: Reckless Infliction of Emotional Distress is GRANTED*

A party may recover for reckless infliction of emotional distress under New York law by showing the following four elements: "(1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." *Howell v. Neew York Post Co.*, 81 N.Y.2d 115, 121 (N.Y. 1993).

OFS moves to dismiss Plaintiffs' reckless infliction claim on the grounds that (1) there has been no assertion of extreme or outrageous conduct, and (2) there is no assertion of severe emotional distress." In the instant case, OFS is correct that Plaintiffs' claim for reckless infliction

fails because Plaintiffs have not adequately alleged extreme or outrageous conduct by OFS, or that OFS intended to cause, or disregarded the substantial probability of causing, severe emotional harm.

1. Plaintiffs have not alleged extreme or outrageous conduct on the part of OFS.

Plaintiffs argue that they have stated a viable claim because "the simple placement of a concealed camera to capture Plaintiffs in the nude in the master bedroom patently satisfies the 'extreme or outrageous conduct' element." (Pl. Mem at 11.) However, nowhere do Plaintiffs allege that *OFS* intentionally placed hidden cameras. To the contrary, all that is alleged is that OFS failed to conduct an investigation sufficient to allow it to find the cameras hidden therein, and to remove them.

Even if these claims turn out to be true, this conduct would not rise to "extreme and outrageous conduct" or evince an intention to cause, or disregard of a substantial probability of causing, severe emotional distress.

In *Hering v. Lighthouse 2001, LLC* 21 A.D.3d 451 (2d Dep't 2005), the court overturned the denial of defendant property manager's motion for summary judgment seeking to dismiss a reckless infliction of emotional distress claim for defendant's failure to remove peeping holes from a ladies' restroom. In finding that there was insufficient evidence to maintain plaintiff's claim, the court found that the evidence "established only that [defendants] should have been aware of the holes, not that they created or even were actually aware of them" and that therefore no jury could reasonably conclude that defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

Here, Plaintiffs have pled only that Defendants should have been aware of the concealed cameras -- not that Defendants personally installed or were actually aware of them. This is not enough to sustain an action for reckless infliction of emotional distress. To sustain their reckless infliction of emotional distress claim, Plaintiffs must plead that Defendants had more than constructive knowledge of the concealed cameras. Indeed, the extreme and outrageous conduct standard is "rigorous, and difficult to satisfy" and has traditionally only been applied to the most severe of situations. *Cf. Howell*, 81 N.Y.2d at 122 (noting that every intentional infliction of emotional distress claim considered by the New York Court of Appeals has failed because the alleged conduct was not sufficiently outrageous).

Defendants' motion to dismiss Plaintiffs' reckless infliction of emotional distress claim is granted.

C. *Motion to Dismiss Count IV: Violation of G.B.L. § 349 is DENIED*

To state a claim under G.B.L § 349, "a plaintiff must allege both a deceptive act or practice directed toward customers[,] and that such act or practice resulted in actual injury to a plaintiff." *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 3 N.Y.3d 200, 205-206 (N.Y. 2004).

OFS moves to dismiss Plaintiffs' G.B.L § 349 claim on that grounds that (1) there is no assertion that an "allegedly deceptive act caused the injury complained of," and (2) there is no assertion that "similarly-situated customers" would be harmed by any alleged deceptive or false practices. (*See* Dkt. No. 31 at 15.)

OFS's motion fails because (1) Plaintiffs have specifically identified deceptive statements that caused them to rely to their detriment on OFS's false promises and (2) it is evident from the Complaint that Plaintiffs have alleged that "similarly situated" customers may be harmed by

OFS's allegedly deceptive promises on its customer-facing website to "vet" and investigate listings to the standards of the "best hotels."

1. Plaintiffs have adequately alleged deceptive statements that caused their injury.

Plaintiffs have clearly identified deceptive statements that caused them to detrimentally rely on OFS's allegedly misleading promises. Specifically, Plaintiffs have alleged that on its website, OFS represents that it is "the only company that visits and vets every home in person," and that "each home is prepared to our exacting hospitality standards." (Ex. 1, ¶ 82.) OFS states that they "visit each home in person to take accurate photographs, detail[] room configurations and home truths, so you [the renter] can book with the same confidence you have in the best hotels." (*Id.*, ¶ 83.)

Plaintiffs allege that "OFS rented the Apartment to Plaintiffs despite knowing that it had not carefully vetted the Apartment." (Am. Compl. ¶ 87.) They allege that they relied on the allegedly deceptive representations that OFS would "vet" the Apartment to the standards of the "best hotels." (*Id.* ¶ 83.) Plaintiffs allege that they were harmed because even a reasonable vetting and investigation would have uncovered the concealed cameras that ultimately captured their private moments in the master bedroom. Indeed, Plaintiffs allege that an OFS representative stated to Mr. Ho that OFS had "botched" its vetting and inspection protocols. (Ex. 1, ¶ 42.)

Plaintiffs have clearly asserted that OFS's allegedly deceptive acts or statements caused the injuries complained of.

2. Plaintiffs have alleged that OFS's deceptive act was directed toward customers.

Defendants argue that Plaintiffs' claim should be dismissed because, "There is no claim that any other user of the website found a video camera in their rented property." (Dkt. No. 31 at 14.) However, Defendants mischaracterize the nature of Plaintiffs' claims.

Plaintiffs have alleged that "similarly situated" customers may be harmed by OFS's allegedly deceptive promises to "vet" and investigate listings to the standards of the "best hotels." (Am. Compl. ¶ 84.) They further allege that "OFS knowingly and intentionally makes these claims and promises to entice consumers to rent properties through its internet portal." (*Id.*) Plaintiffs clearly allege that these allegedly deceptive statements were directed broadly at consumers, and they do not allege that the statements were directed to any particular or specific type of condition (such as a hidden camera).

Further, it is evident from the face of the Amended Complaint that any customer who views OFS's promises on their website may also be deceived into detrimentally relying on the expectation that the apartment they rent through OFS will be vetted.

Defendant's motion to dismiss Count IV of the Amended Complaint is denied.

## IV. Claims against Winick

### A. *Motion to Dismiss Count V: Intentional Infliction of Emotional Distress is DENIED*

To make out a prima facie case of intentional infliction of emotional distress, a plaintiff must plead: "(1) extreme and outrageous conduct; (2) the intent to cause … severe emotional distress; (3) causation; and (4) severe emotional distress." *Brunache v. MV Transp., Inc.*, 151 A.D.3d 1011, 1014 (2d Dep't 2017).

Mr. Winick moves to dismiss the intentional infliction of emotional distress claim on the grounds that (1) Plaintiffs' allegations do not amount to extreme and outrageous conduct, and (2) there is no harm because there is "no proof that any footage ever existed." (*See* Def. Mem. at 16.)

In support of their claim, Defendants submit affidavits hoping to show that "if any footage existed [of Plaintiffs] it would only have been stored for 24 hours and then permanently deleted," and that "Neither Winick nor his wife … viewed or listened to any footage that may

have been captured during the relevant time period." (*See* Winick Aff., Ex. 2, at ¶¶ 6-11; *see also* I. Winick Aff. Ex. 3 at ¶¶ 5-7.)

As noted above, the Court disregards the affidavits submitted in support of this Motion to Dismiss. *See Robinson*, 2012 WL 3024766; *Aleem*, 2017 WL 3105870. However, even if the Court were to consider Defendants' affidavits, the motion would still fail.

First, as previously noted, the simple placement of a concealed camera to capture Plaintiffs in intimate moments clearly satisfies the "extreme or outrageous conduct" element. *See Doe v. Doe*, 2017 WL 3025885, at *5 (S.D.N.Y. July 14, 2017) ("Videotaping a person when she has a reasonable expectation of privacy is 'extreme and outrageous' even if she is neither identified nor identifiable in the tape."); *Sawicka v. Catena*, 79 A.D.3d 848, 849-50 (2d Dep't 2010) ("Here, [defendant's] conduct in installing a video camera in a workplace restroom in order to surreptitiously view and record the plaintiffs while they used the restroom is conduct which is unquestionably outrageous and extreme."); *Dana v. Oak Park Marina, Inc.*, 230 A.D.2d 204, 209 (4th Dep't 1997) (holding that secret videotaping of patrons and guests in various stages of undress constituted "extreme or outrageous conduct").

Second, though Defendants claim that there is no harm because there is "no proof that any footage ever existed," or "been released into the public domain," (Dkt. No. 31 at 16) New York law provides that the existence of footage from a concealed camera is not an "essential element" to an emotional distress claim. *Cf. Adams*, 261 A.D.2d at 903; *Salamone*, 259 A.D.2d at 988. The mere allegation that a concealed camera was purposely maintained to capture Plaintiffs dressing and undressing in the master bedroom is adequate to sustain this cause of action.

Defendants' motion to dismiss Count V of the Amended Complaint is denied.

B. *Motion to Dismiss Count VI: Negligent Infliction of Emotional Distress is DENIED*

Mr. Winick moves to dismiss Plaintiffs' negligent infliction of emotional distress claim on the grounds that (1) he owed no duty under G.B.L. § 395-b(2-a), (2) there has been no "guarantee of genuineness" because there has been no allegation that anyone accessed the video footage, and (3) Plaintiffs have insufficiently alleged harm. (*See* Dkt. No. 31 at 17-18.)

Each of Winick's contentions is unavailing.

First, Defendants' contention that Winick owed no duty to Plaintiffs is directly in contravention with New York law. As already noted above, G.B.L. § 395-b(2-a) "set[s] forth a duty owed directly to the plaintiff that may serve as a basis for a cause of action for the negligent infliction of emotional distress." *Dana*, 230 A.D. at 208. Plaintiffs have pled that Mr. Winick breach a duty to Plaintiffs by maintaining a concealed camera that captured them in private moments in the master bedroom.

Second, and as noted above, the fact that there is no allegation that anyone accessed the video footage does not defeat a guarantee of genuineness. New York law provides that the existence of footage from a concealed camera is not an "essential element" to an emotional distress claim. *See Adams*, 261 A.D.2d at 903; *Salamone*, 259 A.D.2d at 988. The allegation that a concealed camera was purposely maintained to capture Plaintiffs dressing and undressing in the master bedroom is adequate to sustain this claim.

Third, Plaintiffs have alleged sufficient harm to support the negligent infliction claim. Plaintiffs must merely allege that they have suffered severe emotional distress as the result of having their intimate moments captured by a concealed camera. *Dana*, 230 A.D.2d at 209; *Salamone*, 259 A.D.2d at 988. Here, "severe emotional distress" is adequately asserted by the contention that Plaintiffs suffered "severe emotional distress, including but not limited to,

humiliation, shock, embarrassment, intimidation, physical distress and injury, fear, stress and other damages." (Am. Compl. ¶ 80.)

Defendants' motion to dismiss Count VI of the Amended Complaint is denied.

*C.  Motion to Dismiss Count VII: Violation of 18 U.S.C. § 2511 is DENIED*

Mr. Winick contends that Count VII of the Amended Complaint must be dismissed because "No private cause of action exists under 18 U.S.C. § 2511." (Dkt. No. 31 at 18.) Citing 18 U.S.C. § 2511(5)(a)(i), Mr. Winick submits that a civil action for an intercept via a private video is reserved to the Federal Government. (Dkt. 31 at 18-19.)

While it is true that section 5(a)(i) confers a civil cause of action to the Federal Government where the intercepted communication consists of "a private satellite video communication," section 5(a)(i) is irrelevant to Plaintiffs' claim.  Count Seven alleges that Mr. Winick "via use of the camera located in the master bedroom of the Apartment, intentionally intercepted and/or endeavored to intercept the *oral* communications of Plaintiffs while Plaintiffs were staying in the Apartment." (Ex. 1, ¶ 103. (emphasis added).) Thus, Section 5(a)(i) is inapplicable because Plaintiffs allege that Mr. Winick intercepted, or sought to intercept, their oral, rather than a private satellite video, communications.

As regards oral communications, the Federal Wiretapping Act, 18 U.S.C. § 2511(1)(a), provides that it is unlawful for "any person" to "intentionally intercept, endeavors to intercept...any wire, oral, or electronic communication...." Additionally, that statute provides a private right of action to any person whose oral communications were intercepted. 18 U.S.C. § 2511(a) ("[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity...which engaged in that violation such relief as may be appropriate."). Courts have

repeatedly recognized this statutory private right of action against any person who intentionally intercepts oral communications. *Sell It Social, LLC v. Strauss*, 2018 WL 2357261, at *14 (S.D.N.Y. Mar. 8. 2018); *Obeid on behalf of Gemini Real Estate Advisors LLC v. La Mack*, 2017 WL 1215753, at *9 (S.D.N.Y. Mar. 31, 2017). Plaintiffs allege that the camera unlawfully intercepted their private conversations.

Defendants' motion to dismiss Count VII of the Amended Complaint is dismissed.

## V.  Defendants' Motion to Dismiss Pursuant to Rule 12(b)(3) is DENIED

### A.  Legal Standard

"When a motion to dismiss for 'improper venue' is made pursuant to Rule 12(b)(3), the plaintiff has the burden of pleading venue." *Philippe Nyc I LLC v. Philippe West Coast, LLC*, 2016 WL 1183669, at *6 (S.D.N.Y. Mar. 24, 2016) (citing *Person v. Google Inc.*, 456 F. Supp. 2d 488, 493 (S.D.N.Y. 2006)). "To defeat the motion, plaintiffs need only make a prima facie showing of venue." *Id.* (citations omitted). "In analyzing whether the plaintiff has made the requisite prima facie showing that venue is proper, we view all facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007).

"In general, to obtain dismissal based on a forum selection clause the party seeking enforcement of the clause must demonstrate that: (1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause." *Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009) (citing *Phillips*, 494 F.3d at 383-84).

### B.  Venue is Proper in the Southern District of New York Because Forum Selection Clause in the GAR is Permissive, Not Mandatory, and Venue Lies in this Dsitrict under the Venue Statute.

OFS contends that venue is improper because Plaintiffs' claims against OFS should be adjudicated in "England or Wales" pursuant to the GRA's forum selection clause. (Dkt. No. 31 at 20.)

However, dismissal of the Amended Complaint on the basis of the forum selection clause is not required, as the clause at issue is not mandatory, but merely permissive.

The forum selection clause provides: "Any proceedings arising out of or in connection with this agreement *may* be brought in any court of competent jurisdiction in England or Wales." (Dkt. No. 31-2, ¶ 9.5 (emphasis added).) In the Second Circuit it is well settled that, when a forum selection clause is merely permissive, rather than mandatory, a court may hear the case unless venue is otherwise improper. *Global Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011) ("A permissive forum selection clause only confers jurisdiction in the designated forum, but does not deny plaintiff his choice of forum, if jurisdiction there is otherwise appropriate." (citation and internal quotation marks omitted)).

In the instant case, venue is proper. 28 U.S.C. § 1391(b)(2) provides that a "civil action may be brought in...a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...." Since it is undisputed that Plaintiffs allegations arise from their stay in the Apartment, which is situated in this forum, venue is proper in this district. (*See* Ex. 1, ¶¶ 8, 11, 18, 29-30, 35; Dkt. No. 31 at 1-3.)

Defendants' motion to dismiss the Amended Complaint under Rule 12(b)(3) is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) is DENIED in part and GRANTED in part. Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(3) is DENIED. This constitutes the

written opinion and order of the Court. The Clerk of the Court is directed to remove the motions at Dkt. Nos. 7 and 30 from the Court's list of pending motions.

Dated: April 2, 2020

_____

Chief Judge

BY ECF TO ALL COUNSEL